Thornton, J., concurring: I agree with the majority opinion and write separately to respond to some of the dissenters’ concerns. Judge Gustafson contends that section 1.6664-2(c)(1), Income Tax Regs., contradicts the plain meaning of section 6664(a)(1)(A) by defining “the amount shown as the tax by the taxpayer on his return” so as to remove excess withholding credits. I respectfully disagree. As explained in more detail below, the Code authorizes the IRS to process an assessment to recover or disallow excess withholding credits as an adjustment to the tax shown on the return on which the credit was claimed. Consistent with those provisions, the regulation permissibly treats the amount shown on the return as reflecting such an adjustment. The IRS summarily assessed petitioner’s erroneous refunds pursuant to section 6201(a)(3), which authorizes assessment of excess (“overstated”) withholding credits in generally the same manner as mathematical or clerical errors (for simplicity, math errors): If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, or of the amount paid as estimated income tax, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return, except that the provisions of section 6213(b)(2) (relating to abatement of mathematical or clerical error assessments) shall not apply with regard to any assessment under this paragraph. The contemporaneous 1954 legislative history sheds some light on this provision: Under this new paragraph refunds caused by erroneous prepayment credits may be recovered by assessment in the same manner as in the case of a mathematical error on the return. For example, assume a case in which the tax shown on the return is $100, the claimed prepayment credit is $125, and refund of $25 is made, and that it is later determined that the prepayment credits should have been only $70. Under existing law, $30 (the tax of $100 as shown on the return less the $70 credit) can be immediately assessed as tax shown on the return which was not paid, but the remaining $25 must be recovered by suit in court. Under the new provision, the entire $55 can be assessed and collected. [H. Rept. 1337, 83d Cong., 2d Sess. A404 (1954).] As this history indicates, the legislative impetus for section 6201(a)(3) was the perceived need to give the IRS a means, previously lacking, of recouping erroneous refunds attributable to overstated withholding credits without having to file suit. The legislative solution, as effected in section 6201(a)(3), was to permit the IRS to assess, “in the same manner as in the case of a mathematical or clerical error appearing upon the return,” not only the erroneous refund ($25 in the above example), but also the amount of overstated withholding credits that the IRS had previously “allowed” against the tax shown on the return but that had not generated a refund ($30 in the example).[1] Section 6201(a)(3) authorizes overstated withholding credits to be “assessed”. And because under section 6201(a) the IRS’ assessment authority pertains only to “taxes”, it follows that assessment of overstated withholding credits under section 6201(a)(3) is properly considered as assessment of additional taxes.[2] Furthermore, because section 6213(b) is the only Code provision that expressly addresses the process for making assessments arising out of math errors, it is reasonable to conclude that section 6201(a)(3), in directing that overstated withholding credits may be assessed “in the same manner as in the case of a mathematical or clerical error appearing upon the return,” means in the same manner as described in section 6213(b). Otherwise, this directive would not be meaningful. Consequently, we look to section 6213(b) for guidance. Pursuant to section 6213(b)(1), summary assessment is permitted (i.e., the restrictions applicable to deficiencies are made inapplicable) if a math error on a return gives rise to an amount of tax “in excess of that shown on the return”. From this phrase it is clear that the tax “shown on the return” is the amount the taxpayer has shown on the return before any adjustment is made to correct the math error; i.e., the amount “shown on the return” is the amount that reflects the math error. Because there is no suggestion in the Code that the amount of tax “shown on the return” should mean different things in different sections, the same analysis holds true in determining the impact of a math error on the tax “shown * * * [on the] return” under section 6211(a)(1) (defining “deficiency” by reference to the amount of tax shown on the return) and section 6664(a)(1) (defining “underpayment” by reference to the amount of tax shown on the return). Furthermore, because section 6201(a)(3) directs that overstated withholding credits be assessed in the same manner as math errors, it is reasonable to conclude that the same analysis holds true for overstated withholding credits. In other words, for overstated withholding credits under section 6201(a)(3), as for other types of math errors under section 6213(b)(1), summary assessment is permitted if overstated withholding credits give rise to an amount of tax “in excess of that shown on the return”. Sec. 6213(b)(1). As with math errors, this means that the amount of tax “shown on the return” is the amount shown by the taxpayer that reflects the overstated withholding credits. Again, absent some contrary statutory signal, it is reasonable to conclude that this result carries over to section 6664(a)(1), where tax “shown * * * [on the] return” is a relevant consideration.[3] In short, under this statutory framework the “amount shown as the tax by the taxpayer on his return” under section 6664(a)(1)(A) is the amount that reflects reduction for excess withholding credits. This is precisely the result achieved by the regulation.[4] The legislative history of section 6664(a) indicates that its new (in 1989) definition of “underpayment” was not intended to differ “substantively” from prior law. H. Rept. 101-247, at 1394 (1989). But in the same sentence this legislative history states that the new definition was intended to “simplify and coordinate” diverse “underpayment” definitions under former law. Id. And in fact the new “underpayment” definition in section 6664(a) differs in various ways from the old “underpayment” definitions which it replaced.[5] Of special importance for present purposes, it differs from the former section 6653(c)(1) definition by dropping the cross-reference to the section 6211 “deficiency” definition with its directive that the “tax imposed” and the “tax shown on the return” should be “determined without regard to” withholding credits, among other things. Judge Gustafson suggests that this striking difference between these two “underpayment” definitions is of no consequence. Citing the 1944 legislative history of section 6211, he contends that the phrase “determined without regard to” was meant merely to clarify that “refunds” of claimed over-payments of withheld tax should not increase any deficiency. He suggests that this “clarification” was omitted from the section 6664(a) “underpayment” definition merely because section 6664 defined “rebates” in such a manner as to eliminate the former confusion about “refunds”, making the phrase “determined without regard to” redundant and unnecessary.[6] See Gustafson op. pp. 535-536. But this analysis fails to take into account the problem of erroneous refunds arising from overstated withholding credits. As we have seen, Congress separately addressed that problem in 1954 with the enactment of section 6201(a)(3), authorizing the IRS to process an assessment to recover or disallow excess withholding credits as an adjustment to the income tax return on which the credit was claimed. The former section 6653(c)(1) “underpayment” definition excluded such amounts from an underpayment only by virtue of the definition’s express linkage to the “determined without regard to” phrase of section 6211(b). The breaking of that linkage in 1989 in the new section 6664(a) “underpayment” definition had the consequence of permitting overstated withholding credits to be factored into an underpayment, as provided by the regulation.[7] In the final analysis, “the amount shown as the tax by the taxpayer on his return” is a term of art, as is the section 6664(a) definition of “underpayment” of which it is a component. That the meanings of these terms of art may not be immediately plain on their face is attributable in part to the intricate interplay of Code provisions. But the regulation is based upon a construction of these terms and of the larger statutory framework that is, in my view, not merely permissible but correct. For these reasons and the reasons stated in the majority opinion, the regulation is valid. Colvin, Cohen, Gale, Marvel, Goeke, Kroupa, Holmes, and Haines, JJ., agree with this concurring opinion. At first blush it may seem paradoxical to speak, as does sec. 6201(a)(3), of an “overstated” withholding credit as being “allowed”. One would not ordinarily think of an “overstated” amount as being allowed or allowable. But from the example in the above-quoted legislative history it seems clear that the withholding credits were “allowed” only provisionally until the IRS “later determined” that they were overstated. Ultimately, the overstated withholding credits, by virtue of being overstated, were not in fact “allowed” but instead were made subject to the summary assessment provisions of sec. 6201(a)(3). Similarly, although the statute refers to overstatements as being “allowed against the tax shown on the return”, and hence (as Judge Gustafson notes) as being distinct from the tax shown on the return, this phrase merely describes which “allowed” “overstated” amounts are made subject to the operation of sec. 6201(a)(3). The more meaningful consideration is the effect of the statute’s operation upon these amounts. As described in more detail infra, in permitting these overstated amounts to be assessed in the same manner as math errors “appearing upon on the return”, the effect of sec. 6201(a)(3) is to treat the overstated withholding credits as part of the amount shown (erroneously) on the return. Indeed, in the example in the legislative history, in order to recoup the $25 erroneous refund in the manner provided in sec. 6201(a)(3), the IRS must assess not only the original $100 shown on the return but also the $25 associated with the erroneous refund, as an additional amount of tax. A prominent example of a contrary statutory signal appears in sec. 6211(b)(1), which expressly excludes withholding credits from the amount “shown on the return” for purposes of determining a deficiency. Although the old “underpayment” definition of former sec. 6653(c)(1) incorporated these provisions by cross-reference, this linkage between the sec. 6211 “deficiency” definition and the current sec. 6664(a) definition was broken in 1989, as discussed in more detail infra. The effect is to increase the amount of the underpayment by the amount of overstated withholding credits. It might be noted that to be evenhanded the regulation conversely permits unclaimed but otherwise allowable withholding credits to reduce the amount of any underpayment. See sec. 1.6664-3(c), Income Tax Regs. The new “underpayment” definition in sec. 6664(a) replaced at least two different “underpayment” definitions that appeared in these sections of prior law: (1) Former sec. 6653(c)(1), pertaining to additions to tax for negligence and fraud for purposes of income, estate, gift, and certain excise taxes; and (2) former sec. 6653(c)(2), pertaining to additions to tax for negligence and fraud relating to taxes other than as described in sec. 6653(c)(1). Of these two former “underpayment” definitions, only the first incorporated by cross-reference the sec. 6211 “deficiency” definition with its directive that withholding taxes should be disregarded in determining the “tax imposed” and the “tax shown on the return”. Under this analysis it might be thought that the phrase “determined without regard to” was also unnecessary and redundant in sec. 6211, since it contains the same definition of “rebate” as does sec. 6664(a). See secs. 6211(b)(2), 6664(a) (flush language). But of course interpretations that render statutory language unnecessary or redundant are generally disfavored. See 2A Singer & Singer, Sutherland Statutory Construction, sec. 46:6 (7th ed. 2007). For similar reasons, I also respectfully disagree with Judge Wherry’s dissent, which depends in large measure on the assumption that “the amount shown as the tax by the taxpayer on his return” under sec. 6664(a)(1)(A) cannot reflect any reduction for excess withholding credits. X also respectfully disagree with certain technical aspects of Judge Wherry’s analysis, particularly his suggestion that overstated withholding credits are properly considered amounts “collected without assessment” under sec. 1.6664-2(d), Income Tax Regs., which pertains to sec. 31 credits which are “allowable”. By definition, overstated withholding credits are not “allowable”, and in all likelihood (as is true in the case before us) the amounts on which they are predicated have never been “collected”. Properly construed, the regulation does not give rise to the “double-counting error” that concerns Judge Wherry. See Wherry op. pp. 525-526.